COMMONWEALTH *vs.* JAMES J. WATSON.

Suffolk. October 3, 1984. — November 13, 1984.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Homicide. Identification. Practice, Criminal,* Plea.

There was no merit to a criminal defendant's contention that, with respect
to the admission in evidence of a photographic identification made by
a prosecution witness, his Fourteenth Amendment rights were violated
by the existence of a prior arrangement between the police and the
witness in which assurances were made to the witness that he and his
family could be relocated if he agreed to cooperate in the investigation.
[299-301]

In the circumstances, the judge at a murder trial did not abuse his discretion
in refusing to accept the defendant's plea of guilty of the lesser charge
of murder in the second degree. [301]

INDICTMENT found and returned in the Superior Court De-
partment on January 22, 1980.

Following review by the Supreme Judicial Court reported
in 388 Mass. 536 (1983), the case was retried before *Richard
S. Kelley*, J.

*Frank G. Kelleher* for the defendant.

*Ellen M. Donahue*, Assistant District Attorney (*Timothy
Burke*, Assistant District Attorney, with her) for the Common-
wealth.

HENNESSEY, C.J. The defendant was convicted of the murder
in the first degree of Jeffrey S. Boyajian. He appeals from his
conviction, arguing: (1) that his Fourteenth Amendment rights
were violated by allegedly improper police conduct with respect
to a photographic identification; (2) that the judge abused his
discretion in refusing to accept the defendant's plea of guilty
of murder in the second degree; and (3) that justice requires,
under G. L. c. 278, § 33E, that we order a new trial, or that
we direct the entry of a verdict of a lesser degree of guilt,

because the defendant was only vicariously responsible for the killing. We conclude that the defendant's arguments are meritless, and accordingly we affirm.[1]

There is evidence from which the jury could have found the following. At 4 A.M. on November 16, 1979, Richard Dwyer was sitting in his parked taxicab on Washington Street in downtown Boston. He observed three young black men enter ITOA taxicab No. 649, which was parked directly in front of his. The taxicab then drove off. Later that morning, having learned of the murder of the driver of ITOA taxicab No. 649, Dwyer went to a police station. He was shown a photographic array, and identified the defendant as one of the three persons he had seen get into that taxicab. At trial, he again made an identification of Watson as one of the individuals involved.

Shortly after 4 A.M. on the same morning, Phillippa Sweatt, a resident of 20 Brookway Terrace in the Archdale Housing Project, in the Roslindale section of Boston, heard a disturbance outside her kitchen window. She saw the victim, Jeffrey S. Boyajian, being pulled from his taxicab by three men. Boyajian was yelling, "Leave me alone. Let me go." Phillippa Sweatt later, in court, identified the defendant as one of the three men involved.

While Mrs. Sweatt was observing this scene, she called her son to the window. Neal Sweatt testified that he recognized the defendant Watson as one of the two men holding the victim, while a third man, Frederick Clay, went through his pockets. The three men then began to beat Boyajian, and Neal Sweatt testified that he heard him cry out, "Take what you want, but let me live." Boyajian was knocked to the ground, and Sweatt's view of what then happened was partially obscured by a dumpster. The three apparently left the victim lying on the ground, while Clay walked over to the taxi. When Clay returned, he pulled an object from his pocket. Sweatt could not see what the

[1] The defendant was first tried, and found guilty of murder in the first degree, in August, 1981. We reversed the defendant's conviction and ordered a new trial, on the ground that the judge had failed to instruct the jury that the defendant "could be guilty of felony-murder, based on armed robbery, only if he had knowledge of [his accomplice's] possession of a gun." Commonwealth v. Watson, 388 Mass. 536, 546 (1983).

object was, but he testified that he heard at least three shots being fired.[2] The three men then ran away. Police officers arrived on the scene minutes later to find Boyajian's body slumped against the dumpster with gunshot wounds in his head.

1. *Photographic identification.* Watson first challenges the propriety of the photographic identification made by Neal Sweatt a few days after the murder.[3] A few minutes after the police had found Boyajian's body, they questioned Sweatt, who was standing in the courtyard of 20 Brookway Terrace. Sweatt initially was reluctant to tell the police what he had seen, allegedly because of fear for his family's safety: "I was scared because I have a family, and the reason why I lied about I didn't see anything is because I was afraid for my family, and then I see that my mother she couldn't sleep at night." To alleviate his fear, the police offered to help Sweatt and his family move from the Archdale project to another housing project, if Sweatt would describe to the police what he had seen on the morning of November 16. Accordingly, on November 19, Sweatt made a positive identification of the defendant Watson from a group of twelve or fourteen photographs of black males who frequented the Archdale project. He then positively identified the defendant at trial as one of the three men involved in beating Boyajian. Through the efforts of the Boston police, Sweatt and his family were moved to a different housing project.

[2] We affirmed the conviction of murder in the first degree of Frederick Clay in *Commonwealth* v. *Watson, supra.* The third assailant has never been apprehended.

[3] At trial the defendant challenged neither the admissibility of the identification made by Sweatt, nor the judge's refusal to accept his plea of murder in the second degree. "It is a fundamental principle of appellate review that a prompt objection at trial is a prerequisite to the presentation of an issue for appellate review." *Commonwealth* v. *Gallison,* 383 Mass. 659, 669 (1981). However, we will consider such issues under G. L. c. 278, § 33E, to determine whether "there is a 'substantial likelihood that a miscarriage of justice has occurred.'" *Commonwealth* v. *Tavares,* 385 Mass. 140, 149, cert. denied, 457 U.S. 1137 (1982), quoting *Commonwealth* v. *Garcia,* 379 Mass. 422, 439 (1980).

"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside . . . only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Commonwealth* v. *Clark*, 378 Mass. 392, 399 (1979), quoting *Simmons* v. *United States*, 390 U.S. 377, 384 (1968). Nothing in the record shows that the police conduct here rendered the photographic identification "impermissibly suggestive." The defendant has raised no challenge to the manner in which the police displayed the photographs to Neal Sweatt. Cf. *Commonwealth* v. *Paszko*, 391 Mass. 164, 169 (1984); *Allen* v. *Moore*, 453 F.2d 970, 972 (1st Cir.), cert. denied, 406 U.S. 969 (1972). Instead, he challenges only the propriety of the investigators' assurances to Sweatt that he and his family could be relocated if Sweatt agreed to cooperate.

The defendant has cited no authority which even suggests that this kind of arrangement between the police and a prosecution witness somehow renders unconstitutional the admission of the witness's identification of a defendant. Of course, the Commonwealth is required to reveal any "understanding or agreement" with a witness, and the defendant is entitled to introduce it at trial. *Giglio* v. *United States*, 405 U.S. 150, 154-155 (1972). *Commonwealth* v. *Haywood*, 377 Mass. 755, 759 n.4 (1979). Moreover, defense counsel must be permitted "reasonable cross-examination of a witness for the purpose of showing bias, particularly where that witness may have a motivation to seek favor with the government." *Id.* at 760, quoting *Commonwealth* v. *Dougan*, 377 Mass. 303, 310 (1979). The record shows, and the defendant does not contest, that he was in fact given the opportunity to test for any bias engendered by Sweatt's understanding with the police. However, the mere existence of this understanding does not render the witness's testimony inadmissible. Such an arrangement is relevant "to the credibility of [a witness's] statements, not to their admissibility." *Commonwealth* v. *Hunt*, 392 Mass. 28, 37 n.10 (1984). See *Commonwealth* v. *Johnson*, 372 Mass. 185, 190 (1977) (assessment of reliability of such witnesses "peculiarly

and traditionally within the range of exclusive competence of the jury"). See also *United States* v. *Librach*, 536 F.2d 1228, 1231 (8th Cir.), cert. denied, 429 U.S. 939 (1976).[4]

2. *The judge's refusal to accept defendant's guilty plea.* A judge is afforded wide discretion in determining whether to accept a plea of guilty. See *Commonwealth* v. *Souza*, 390 Mass. 813, 820 (1984); *Commonwealth* v. *Dilone*, 385 Mass. 281, 285 (1982). "[T]here is no constitutional right to have [a] plea accepted." *Id.* See *Santobello* v. *New York*, 404 U.S. 257, 262 (1971). Nothing in the record suggests that the judge abused his discretion in rejecting the defendant's attempt to plead guilty of the lesser charge of murder in the second degree, after the Commonwealth had rested its case. See *Maxwell* v. *United States*, 368 F.2d 735, 739 (9th Cir. 1966). The Commonwealth had repeatedly and emphatically expressed its desire to obtain a conviction of murder in the first degree, and by the time the judge considered the defendant's plea, overwhelming evidence of guilt had been adduced. Moreover, the defendant was evasive when being questioned by the judge about his attempted plea. In fact, the defendant denied that he had seen anyone shoot Boyajian, despite eyewitness testimony that he was present while the victim was shot in the head five times at close range. In these circumstances, there was no abuse of discretion.

3. *Review under G. L. c. 278, § 33E.* Finally, the defendant contends that, because he did not actually shoot the victim, we should exercise our power under G. L. c. 278, § 33E, to order a new trial or to direct the entry of a verdict of a lesser degree of guilt. We decline to do so. "[O]ur power to mitigate verdicts under § 33E is to be used sparingly." *Commonwealth* v. *Dalton*, 385 Mass. 190, 197 (1982). We have never held that one who is only vicariously liable for the actual killing

---

[4] Agreements such as that at issue here, which are designed to protect a potential witness from retaliation, are hardly unusual. In fact, according to the Organized Crime Control Act of 1970, Pub. L. 91-452, § 502, 84 Stat. 933 (1970), in certain circumstances "[t]he Attorney General . . . is authorized to rent, purchase, modify, or remodel protected housing facilities and to otherwise offer to provide for the health, safety, and welfare of witnesses and the persons intended to be called as Government witnesses . . . ." See generally *United States* v. *Partin*, 552 F.2d 621, 643-645 (5th Cir.), cert. denied, 434 U.S. 903 (1977).

cannot be convicted of murder in the first degree. See *Commonwealth* v. *Brown*, 378 Mass. 165, 173 (1979); *Commonwealth* v. *Soares*, 377 Mass. 461, 470-472, cert. denied, 444 U.S. 881 (1979). In this case, the defendant actively participated in the brutal beating and murder of the victim. There are no "mitigating or extenuating circumstances," *Commonwealth* v. *King*, 391 Mass. 691, 695-696 (1984), to suggest that this homicide is not appropriately classified as murder in the first degree.

*Judgment affirmed.*