COMMONWEALTH *vs*. GLENN L. BOURGEOIS.

Plymouth. November 9, 1988. — February 8, 1989.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Identification. Evidence,* Identification, Photograph, Admissions and con-
fessions. *Constitutional Law,* Confrontation of witnesses. *Homicide.
Felony-Murder Rule. Robbery. Armed Assault in a Dwelling. Practice,
Criminal,* Instructions to jury, Capital case. *Malice. Intent. Assault with
Intent to Murder.*

At a criminal trial, the judge correctly excluded evidence from a State police
    officer and a corroborating witness that the victim had failed to identify
    a photograph of the defendant in a group of photographs shown him
    eight days after the crime, although (as the jury heard) the victim did
    select an accomplice's photograph from a different group of photographs,
    where the record contained nothing to show that the victim's nonidentifi-
    cation of the defendant was exculpatory. [62-63]

Evidence at the murder trial of one of two armed intruders who shot a
    seventy-five year old man in his home during a robbery warranted the
    jury in finding the defendant guilty of murder in the first degree on the
    theory of deliberately premeditated malice aforethought. [63-64]

Although the judge at the trial of indictments arising from a shooting during
    a robbery erred in instructing the jury, with respect to felony-murder,
    that the crime of unarmed robbery is inherently dangerous to human
    life, the error was nonprejudicial where the jury, on proper instructions,
    convicted the defendant of armed robbery and armed assault in a dwelling
    house, both felonies inherently dangerous to human life so as to support
    a verdict of guilty of murder in the first degree on the theory of felony-
    murder. [64-65]

At the trial of one of two armed intruders who shot a seventy-five year old
    man in his home during a robbery, the judge's unobjected-to instructions
    to the jury on assault with intent to murder did not create a substantial
    risk of a miscarriage of justice. [65]

There was no merit to a criminal defendant's contention that the judge at
    his trial erred in denying his motion to suppress certain evidence that
    the Commonwealth elected not to introduce and that the defendant then
    introduced during the cross-examination of a police officer. [65-66]

INDICTMENTS found and returned in the Superior Court Department on October 24, 1983.

The cases were tried before *Augustus F. Wagner, Jr.*, J.

*Stephen Hrones* for the defendant.

*Robert P. Snell*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. Represented by new counsel on appeal, the defendant challenges his convictions of murder in the first degree, armed robbery, armed assault in a dwelling house, assault and battery of a victim over sixty-five years of age by means of a dangerous weapon (G. L. c. 265, § 15A [1986 ed.]), and three charges of assault with intent to murder while armed with a dangerous weapon (G. L. c. 265, § 18 [*b*] [1986 ed.]).

The indictments arose out of the following circumstances. On September 19, 1983, the defendant and one Fernette, whose convictions on substantially similiar charges were upheld in *Commonwealth* v. *Fernette*, 398 Mass. 658 (1986), robbed Hollis Jackson, age seventy-five, at his home in Middleborough. The victim was shot twice, once in the mouth and once in the back. The two robbers fled. Jackson obtained help from neighbors; the police were called. The police pursued the robbers, who fled in the victim's automobile. During the course of the pursuit, shots were fired at the pursuing police. Each robber was apprehended. The victim died of one of the gunshot wounds on October 20, 1983.

We sustain the defendant's various convictions, and, as to the murder conviction, we see no ground for providing relief under G. L. c. 278, § 33E. We recite additional facts bearing on the issues as we discuss them.

1. The defendant argues that the judge erred in excluding evidence from a State police officer and corroborating witness that the victim, in his hospital bed, had failed to identify a photograph of the defendant, Bourgeois, in an array held eight days after the shooting, although (as the jury heard) the victim did select Fernette's photograph from a different group of photographs. He argues that exclusion of evidence of the victim's failure to identify a photograph of the defendant violates

his constitutional rights of compulsory process and due process. See *Crane* v. *Kentucky*, 476 U.S. 683, 690-691 (1986); *Chambers* v. *Mississippi*, 410 U.S. 284 (1973); *Washington* v. *Texas*, 388 U.S. 14 (1967).[1] If the victim had made a positive identification of the defendant, that fact would not in the circumstances have been admissible. See *Commonwealth* v. *Daye*, 393 Mass. 55, 60-62 (1984).

The defendant's claim lacks persuasive force because there is no evidence on the record of this trial that the victim had such an opportunity to view the defendant as would have permitted the victim to identify the defendant. The victim's house was dark immediately after the shooting, particularly in the bedroom where the victim apparently had been tied up for a long time. We reject the defendant's attempt to rely on evidence in the case against Fernette concerning the victim's opportunity to observe the robbers. See *Commonwealth* v. *Fernette*, 398 Mass. 658, 660-661 (1986). There was, moreover, no offer of proof concerning the similarity or dissimilarity of the picture of the defendant and his appearance on the day of the crime.

No common law rule of evidence, such as a hearsay exception, provides an indication of the reliability of the excluded identification evidence, nor is there any separate assurance of the evidence's trustworthiness. See *Ohio* v. *Roberts*, 448 U.S. 56, 73 (1980). Because this is not a case in which hearsay evidence was used against the defendant, the defendant's constitutional right to confrontation was not impaired by the judge's ruling. To decide this appeal it is sufficient to say that, on this record, there has been no showing that the victim's nonidentification of the defendant was exculpatory.

2. We reject the defendant's argument that he was entitled to a required finding of not guilty on the charge of deliberately premeditated murder. Applying the appropriate standard (see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 [1979]), we have no difficulty in concluding that a finding of premeditation, beyond a reasonable doubt, was warranted on the evi-

---

[1] The defendant refers to art. 12 of the Massachusetts Declaration of Rights but makes no separate argument under the State Constitution.

dence. The facts that the victim was shot twice and that Fernette and the defendant carried loaded handguns, coupled with fair inferences from the circumstances of the shooting, support a finding of sufficient reflection to constitute deliberately premeditated murder. "[E]ven if the defendant were not the person who fired the fatal shot, there was ample evidence which, if believed, justified the jurors in convicting the defendant of deliberately premeditated murder on the basis of joint enterprise." *Commonwealth* v. *Fernette*, 398 Mass. 658, 669 (1986).

3. In a challenge whose underpinnings are neither fully apparent nor based on a precise objection at trial, the defendant argues that the judge charged the jury erroneously when he told them that the conscious disregard of risk to human life essential to a felony-murder conviction could be presumed from the nature of the underlying felonies. The judge did err in telling the jury that the crime of unarmed robbery was inherently dangerous to human life. *Commonwealth* v. *Moran*, 387 Mass. 644, 651 (1982) ("Unarmed robbery is not inherently dangerous to human life"). Here, however, the defendant was found guilty of both armed robbery and armed assault in a dwelling house, as to which the judge gave proper instructions. The error concerning unarmed robbery was, therefore, not prejudicial.

The felonies of which the defendant was convicted are inherently dangerous to human life. See *Commonwealth* v. *Currie*, 388 Mass. 776, 785-786 (1983). Once such a felony and a homicide in the course of the commission of that felony are proven, the intent to commit the underlying felony is, in effect, substituted for the malice aforethought otherwise necessary to support a verdict of guilty of murder in the first degree. *Commonwealth* v. *Moran*, 387 Mass. 644, 649 (1982). *Commonwealth* v. *Matchett*, 386 Mass. 492, 502 (1982).

The judge adequately charged the jury that the defendant could not be liable as an accessory to either armed robbery or felony-murder, if armed robbery or armed assault were the underlying felony, unless the defendant knew that his accomplice had a weapon. See *Commonwealth* v. *Watson*, 388 Mass. 536, 543-545 (1983), *S.C.*, 393 Mass. 297 (1984). No

*Matchett* type of instruction was even needed as to these felonies. *Commonwealth* v. *Currie, supra* at 786.

4. The defendant advances a challenge, not supported by an objection at trial, to the judge's charge on assault with intent to murder which is similar in substance to a challenge that was successful in *Commonwealth* v. *Fernette, supra* at 671. The judge's charge in the *Fernette* case failed to advise the jury that the Commonwealth had to prove that the defendant harbored a specific intent to kill and that proof of malice alone would not be sufficient to convict the defendant of assault with intent to murder. *Id.* See *Commonwealth* v. *Henson*, 394 Mass. 584, 591 (1985). We reversed Fernette's convictions of assault with intent to murder. In the case before us, however, the judge's charge differs significantly. He explicitly told the jury that "the specific intent to murder is essential to convict the defendant of assault with intent to murder. The intent to inflict bodily injury or do serious bodily harm is not sufficient. Such intent must be present . . .."

It would have been better if the judge had stated explicitly that proof of both an intent to kill and of malice (i.e., in this context, the absence of justification, excuse, and mitigation) is required in order to prove the crime of assault with intent to murder. See *Commonwealth* v. *Ennis*, 398 Mass. 170, 177-178 (1986); *Commonwealth* v. *Henson, supra* at 591. Although, when a proper objection has been made, the principles of the *Henson* case are retroactive (see *Commonwealth* v. *Ennis, supra* at 173-175), if there has been no objection, we need only consider the point in carrying out our function of determining whether there is a substantial risk of a miscarriage of justice. We conclude there is not. The charge on assault with intent to murder told the jury that proof of malice that would be an element of a murder conviction was not enough to convict of the crime of assault with intent to murder.

5. We find meritless the defendant's argument that there is reversible error in the judge's denial of a motion to suppress evidence that the Commonwealth elected not to introduce and that the defendant then did.

In the course of a manhunt that followed the police chase, a sergeant with the Pembroke police department, who had been told that there were two armed men in the woods, discovered the defendant lying in underbrush near a thick section of woods. After the officer had handcuffed the wounded defendant, but before any Miranda warnings had been given, he asked the defendant where his partner was. The defendant answered, "I don't know. I fell and became weak."

After a voir dire hearing during trial, the judge denied the defendant's motion to suppress his admittedly custodial statement. The judge did so on the basis of *New York* v. *Quarles*, 467 U.S. 649, 657 (1984), in which the Court stated that "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." We need not decide whether the rule of the *Quarles* case applies (or would be extended) to a situation in which the safety of police and not of the public generally (as in the *Quarles* case) is threatened,[2] because in this case the defendant introduced his own statement during the cross-examination of the Pembroke police sergeant. That appears to have been a tactical choice. Even if the Commonwealth had presented that evidence, the error would have been inconsequential in light of the overwhelming evidence against the defendant.

6. We see no basis for providing relief under G. L. c. 278, § 33E, as to the defendant's conviction of murder in the first degree.

*Judgments affirmed.*

---

[2] Although the *Quarles* opinion speaks generally of "public safety" (*id.* at 651, 656, 657), there is some suggestion in the opinion that objectively warranted concerns for police safety as well as for public safety might also justify not applying the Miranda rule. See *id.* at 658-659. Compare *United States* v. *Eaton*, 676 F. Supp. 362, 366 (D. Me. 1988) ("the safety of the arresting officers was at high risk"), with *State* v. *Hazley*, 428 N.W.2d 406, 411 (Minn. Ct. App. 1988) ("[m]issing accomplices cannot be equated with missing guns in the absence of evidence that the accomplice presents a danger to the public" requiring immediate police action).