UNITED STATES of America

v.

**Thomas Otis EATON, Tod Emore Alexander.**

**Crim. No. 87–00080–P.**

United States District Court, D. Maine.

Jan. 5, 1988.

William H. Browder, Jr., Nicholas M. Gess, Asst. U.S. Attys., U.S. Attorneys office, Portland, Me., for plaintiff.

David C. Pomeroy, Portland, Me., for defendant.

## MEMORANDUM OF DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS IN PART

GENE CARTER, District Judge.

### I. *Procedural Posture of the Case*

This matter is before the Court on the motion of the Defendant, Thomas Otis Eaton, filed on October 21, 1987, to suppress certain statements made, and evidence seized, at the time of his arrest on September 15, 1987.[1] Defendant was indicted by a

---

1. Specifically, Defendant moves for the suppression of 1) a loaded semi-automatic pistol seized from underneath the front seat of his truck, 2) statements made to the arresting officer *prior to* the issuance of *Miranda* warnings, and 3) state-

grand jury of this district on September 22, 1987, in a three-count indictment charging him and his codefendant with possession with intent to distribute in excess of five hundred (500) grams of cocaine, and conspiracy to do the same, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii), and 846, and 18 U.S.C. § 2. Defendant was also charged with the use of a firearm in the commission of these felonies, in violation of 18 U.S.C. § 924(c)(1).

A hearing was held on said motion on November 25, 1987, at which testimony was given by DEA Special Agents Michael Cunniff and James Langella.

The statements sought to be suppressed fall into two categories. First, Defendant seeks to suppress his statements made to Agent Cunniff prior to the issuance of *Miranda* warnings. While in the process of arresting the Defendant, Agent Cunniff asked whether he had a gun and the Defendant replied that it was under the front seat of the vehicle. After the Defendant had been handcuffed, Agent Cunniff asked the Defendant what he was doing there, and the Defendant answered that he was there to help a friend with his vehicle. Both of these sets of statements were made in response to questions by the arresting agent *prior to* the Defendant being read his *Miranda* rights.

Second, Defendant seeks to suppress statements made to Agent Langella after he had been read *Miranda* warnings by Agent Cunniff. Defendant argues that Agent Langella did not know whether Defendant had waived his *Miranda* rights, only that Agent Cunniff had read him those rights, and in any event that Defendant never affirmatively waived those rights to Agent Cunniff.

In addition to those two categories of statements, Defendant also seeks suppression of a loaded 9mm Browning automatic pistol that was seized by Agent Langella from underneath the driver's seat of Defendant's vehicle.

ments made after *Miranda* warnings were given.

## II. *Findings of Fact*

The facts relevant to the decision of this motion are largely uncontested. The Government and Plaintiff's counsel have stipulated that, at the time of his arrest on September 15, 1987, there was probable cause to arrest Defendant for conspiring with another to violate federal drug laws. Over a period of several days prior to Defendant's arrest, a confidential government informant had met with codefendant Alexander on several occasions in preparation for the sale and transfer of approximately one kilo of cocaine for $50,000. Law enforcement officials learned from the confidential informant that the transfer was to take place on the evening of September 15, 1987, and that as part of that transfer, Defendant would be driving his pickup truck into a specifically identified turnout area off route 201 in Topsham, Maine. At approximately 8:10 pm, Defendant was observed driving into the designated turnout area. Codefendant Alexander, who was already with the confidential informant at a nearby location, was then arrested. DEA Special Agents Cunniff and Langella, along with Special Agent Gerard Brady of the Cumberland County Task Force, were then signalled to arrest Eaton.

Agents Cunniff and Brady approached the vehicle and ordered the Defendant out of the truck. Defendant shut the truck door upon exiting and, as directed by Agent Cunniff, leaned against the cab of the truck with his hands. In the process of stabilizing the Defendant in a non-threatening posture against the truck, Agent Cunniff—having been previously advised by Agent Langella that the Defendant had a permit to carry a handgun—asked the Defendant if he was carrying a gun. The Defendant replied that there was one under the front seat of the truck. At that time, the Defendant had not been handcuffed. Agent Langella opened the driver's side door of the truck and retrieved the loaded pistol from underneath the driver's seat. Agent Cunniff then asked the Defendant what he was doing there, to which the

Defendant replied that he was there to help a friend whose car had broken down.

It was not until these statements were elicited that Agent Cunniff read Defendant his *Miranda* rights. Agent Cunniff testified that Defendant indicated that he understood his *Miranda* rights after each such right was read to him. After reading the Defendant all his rights, Agent Cunniff asked Defendant if he wished to waive those rights and speak to him without an attorney being present. Defendant replied that it depended on what questions were asked. Agent Cunniff then turned the Defendant over to Agent Langella after informing him that the Defendant had been given his *Miranda* warnings. Agent Langella then proceeded to question him. In the course of that discussion, the Defendant asked how certain aspects of his alleged involvement were known and Agent Langella responded by revealing certain aspects of the investigation. The Defendant made certain admissions as to his participation.

### III. *Discussion*

#### A. *Pre–Miranda Statements Made to Special Agent Cunniff*

Generally, an individual must be informed of his *Miranda* rights prior to custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Government concedes that the Defendant was in police custody at the time Agent Cunniff asked about the gun, and Agent Cunniff's direct questioning of the Defendant was clearly the type of custodial "interrogation" covered by the *Miranda* ruling. It is therefore necessary to inquire whether Agent Cunniff's inquiry about the gun, or his inquiry about Defendant's reasons for being at the turnout area, are covered by any exception to the *Miranda* rule.

In *New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), the Supreme Court carved out a narrow "public safety" exception to the *Miranda* rule, holding that *Miranda* warnings need not be given prior to questions intended to secure the safety of the public or the arresting officer's own safety. *Id.* at 658–59,

104 S.Ct. at 2632–33. In that case, the defendant had discarded a gun in a crowded supermarket and the police had asked where it was. In holding that the Defendant's statement in response to that question should not be excluded, the *Quarles* court stated:

> We conclude that the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination.

467 U.S. at 657, 104 S.Ct. at 2632.

In recognizing the narrow "public safety" exception to the *Miranda* rule, the Supreme Court also made clear that, to be permissible, the type of question asked must not be merely investigatory but must "relate to an objectively reasonable need to protect the police or the public from any immediate danger associated with the weapon." *Quarles,* 467 U.S. at 659 n. 8, 104 S.Ct. at 2633 n. 8. While acknowledging that the exception might "lessen the desirable clarity of that [*Miranda*] rule," the Court also stated that it would be easily applied by officers in the field:

> The exception will not be difficult for police officers to apply because in each case it will be circumscribed by the exigency which justifies it. We think police officers can and will distinguish almost instinctively between questions necessary to secure their own safety or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect.

467 U.S. at 658–59, 104 S.Ct. at 2633.

Agent Cunniff was in the process of arresting the Defendant when he inquired about the gun. The Defendant had not been completely stabilized at the time the question was asked. Agent Cunniff knew that the Defendant had a gun permit and that he was therefore likely to have a gun in his possession. His question was clearly related to an objectively reasonable need to secure both his own safety and that of the other two officers in the process of stabilizing the Defendant. Agent Cunniff asked the bare minimum necessary to determine

the whereabouts of the gun so that it could be secured without unnecessary hazard to the arresting officers. This was an inherently dangerous situation in which the safety of the arresting officers was at high risk. It is this type of situation to which the "public safety" exception is meant to apply. *See United States v. Brady*, 819 F.2d 884, 888 (9th Cir.1987). Consequently, there being no *Miranda* violation in Agent Cunniff's asking about the gun, Defendant's response—that it was under the seat of the truck—is not properly subject to suppression.

■ There is no similar *Miranda* exception for Agent Cunniff's later question to the Defendant about why he was at the turnout area. This was a question meant to elicit testimonial evidence from a suspect already arrested and in custody. *Miranda* warnings should have been given prior to such questioning. Those warnings not having been given, this later question was in violation of Defendant's fifth and fourteenth amendment rights and the response thereto is properly to be suppressed.

### B. *The Gun*

■ The Government has advanced three arguments justifying the warrantless seizure of the gun from underneath Defendant's truck seat.[2] The Court finds that one of those arguments, that the gun was seized incident to a lawful arrest, is sufficient justification for the gun's seizure, and therefore the Court need not address the merits of the remaining two arguments.[3]

■ Although the fourth amendment normally requires that police obtain a warrant from a neutral magistrate before conducting a search, there have been various exceptions carved out from that fundamental principle. One such exception covers a search incident to arrest. Under *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981), when an officer "has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." Here, the parties have stipulated that the Defendant was the subject of a lawful custodial arrest. The search itself was limited to a small area within the passenger compartment of the automobile, and it occurred contemporaneously with the arrest.

Defendant argues that because he was outside the vehicle, in custody, and the vehicle's door was closed, the gun was no longer in an area "within his immediate control" and therefore was not properly seized incident to his arrest. *See Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The type of analysis the Defendant asks the Court to make, one that requires a determination of the relative likelihood that a particular suspect standing outside a vehicle could gain access to the interior of the vehicle, was largely obviated by the Supreme Court's decision in *Belton* establishing a "bright line" test. In *Belton*, the Supreme Court reversed the New York Court of Appeals which had held that "the warrantless search of the zippered pockets of an unaccessible jacket may not be upheld as a search incident to a lawful arrest where there is no longer any danger that the arrestee or a confederate might gain access to the article." *People v. Belton*, 50 N.Y.2d 447, 429 N.Y.S.2d 574, 407 N.E.2d 420 (1980). The "bright line" test of *Belton* makes unnecessary a specific determination herein of the probability of the Defendant, standing next to the closed door of his vehicle, being able to gain immediate control of the gun under the front

---

**2.** Although the Government has not contested that the Defendant has standing to contest the search of his vehicle, the Court notes that the Defendant, being the owner of the vehicle searched and the driver at the time of the search, clearly had a personal, legitimate expectation of privacy in the vehicle. *See Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Portillo*, 633 F.2d 1313, 1317 (9th Cir.1980).

**3.** The Government also argues that the search was justified under the "automobile exception" to the warrant requirement, *see United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), and alternatively, that the gun should be admitted under the "inevitable discovery" doctrine of *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

seat. The search was a reasonable protective measure to secure a weapon the agents had been told was under the seat. It was limited to the passenger compartment of the automobile and was incident to, and contemporaneous with, the Defendant's lawful arrest. The search was well within the *Belton* "bright line" rule,[4] and the gun was therefore properly seized.

### C. *Post–Miranda Statements Made to Agent Langella*

Defendant does not contest the adequacy of the *Miranda* warnings given him by Agent Cunniff, nor does he contend that he did not fully understand those rights. His sole contention is that he did not fully and voluntarily waive those rights to Agent Cunniff and, in any event, that Agent Langella did not know whether he had waived those rights upon assuming custody of him from Agent Cunniff for questioning.

After Agent Cunniff had read the Defendant his *Miranda* rights, he asked him whether he wished to waive those rights and speak without the presence of an attorney. The Defendant responded that it depended on the question asked. Agent Cunniff then relinquished physical custody of the Defendant to Agent Langella and stated to Langella that he had read to Defendant the *Miranda* warnings. Agent Langella then began to question the Defendant, who in turn asked some questions of the officer about how he knew certain information indicated in Langella's questioning. At no time did the Defendant ask for an attorney or assert his right to remain silent. There is no evidence whatsoever of coercion or intimidation on the part of any of the arresting agents.

█ An explicit statement of waiver is not invariably necessary to support a finding that a subject has waived the right to counsel: "The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the right delineated in the *Miranda* case." *North Carolina v. Butler*, 441 U.S. 369, 373, 99

S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979). The Government must prove voluntary waiver by a preponderance of the evidence. *Colorado v. Connelly*, —— U.S. ——, ——, 107 S.Ct. 515, 522–23, 93 L.Ed.2d 473 (1986). Such waiver may be inferred in some cases "from the actions and words of the person interrogated." *Butler*, 441 U.S. at 373, 99 S.Ct. at 1757.

█ The question of waiver has two dimensions: first, the waiver must be voluntary, and second, the waiver "must have been made with a full awareness both of the nature of the right being abandoned and of the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986). Defendant's response to Agent Cunniff that he would waive his rights depending on the question asked certainly indicated, at the very least, that the Defendant understood his rights and would exercise them as he saw prudent. By this conditional waiver, Defendant agreed to answer questions but reserved his right to cut off questioning at any time. Under such circumstances, it is not a violation of the *Miranda* rule for an interrogating officer to ask supplemental questions to determine, at least, which questions a defendant wishes to answer without an attorney present. *Cf. United States v. Weston*, 519 F.Supp. 565, 572 (W.D.N.Y.1981). Defendant could have, at any time during the subsequent questioning, affirmatively asserted his *Miranda* rights in response to any question and thereby ended all further interrogation. He affirmatively asserted that he would do so "depending on the question asked." He did not do so, however, and there is no suggestion that Agent Langella used either force or deception in his subsequent questioning. The Defendant chose to answer questions as he saw prudent, sometimes asking Agent Langella how he knew about certain aspects of his alleged involvement before deciding on whether to answer specific questions.

---

**4.** *See United States v. McCrady*, 774 F.2d 868, 871–72 (8th Cir.1985) (affirming district court's ruling that although the arrested driver had been removed from the scene, a search of the passenger compartment of his vehicle—including an envelope inside the glove compartment—was within the "bright line" rule of *Belton*).

Such behavior indicates that the Defendant knew his rights and, if he did not know the risks of surrendering those rights in order to answer a specific question, he learned those risks by first determining the extent of the Government's knowledge. The totality of the circumstances indicate that the answers the Defendant gave were "the product of free and deliberate choice rather than intimidation, coercion, or deception." *Moran,* 475 U.S. at 421, 106 S.Ct. at 1141.

In sum, the Government has proved by a preponderance of the evidence that the Defendant knowingly and intelligently waived his *Miranda* rights prior to answering the questions of Agent Langella. Defendant argues that because Agent Langella was not told specifically whether or not the Defendant had waived his *Miranda* rights, his questioning was improper and the responses thereto should be suppressed. Defendant cites no authority for this proposition, and the Court finds no merit in this contention within the circumstances of this case.[5] As the Supreme Court has recently stated, "The sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion." *Colorado v. Connelly,* —— U.S. at ——, 107 S.Ct. at 523 (1986). There is no evidence of police over-reaching or coercion in this instance, and the preponderance of the evidence shows that Defendant's choosing to answer Agent Langella's questions was done deliberately, knowledgeably, and after factual inquiry of Agent Langella. There being no violation of his fifth and fourteenth amendment rights by such questioning, his statements to Agent Langella are not subject to suppression.

\* \* \* \* \* \*

Accordingly, for the reasons set forth herein, Defendant's motion to suppress is *GRANTED* with respect to the pre–*Miranda* statements made in response to Agent Cunniff's inquiry about why the Defendant was at the turnout area, and is *DENIED* in all other respects.

So ORDERED.

---

5. The Supreme Court has recently stated in the context of discussing the Sixth Amendment right to counsel that one state official may not claim ignorance of a defendant's unequivocal request for counsel to another state official. *Michigan v. Jackson,* 475 U.S. 625, 634, 106 S.Ct. 1404, 1410, 89 L.Ed.2d 631 (1986) ("... Sixth Amendment principles require that we impute the State's knowledge from one state actor to another"). Similarly, for purposes of probable cause determinations in the fourth amendment context, courts may consider the collective information of all the officers involved in a particular investigation. *Whiteley v. Warden,* 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971); *United States v. Clark,* 559 F.2d 420, 424 (5th Cir.), *cert. denied,* 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977); *United States v. Balsamo,* 468 F.Supp. 1363, 1380 n. 22 (D.Me. 1979). In light of these precedents, the Court finds unconvincing Defendant's argument that only Agent Langella's subjective knowledge should be considered in this Court's fifth amendment analysis.