UNITED STATES of America, Appellee,

v.

Thomas Otis EATON,
Defendant, Appellant.

No. 88–1606.

United States Court of Appeals,
First Circuit.

Heard June 6, 1989.

Decided Nov. 27, 1989.

Joseph H. Field, by Appointment of the Court, with whom Mary Lou Ciolfi and Loyd, Bumgardner & Field, Brunswick, Me., were on brief, for appellant.

F. Mark Terison, Asst. U.S. Atty., Portland, Me., with whom Richard S. Cohen, U.S. Atty., Augusta, Me., was on brief, for U.S.

Before BREYER, REINHARDT,* and TORRUELLA, Circuit Judges.

BREYER, Circuit Judge.

Thomas Eaton appeals from his convictions for conspiring to possess with intent to distribute, and possessing with intent to distribute, more than 500 grams of cocaine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 18 U.S.C. § 2, and for using or carrying a firearm during, and in relation to, a drug trafficking crime, 18 U.S.C. § 924(c)(1). *See United States v. Eaton,* 680 F.Supp. 51 (D.Me.1988) (post-trial opinion); *United States v. Eaton,* 676 F.Supp. 362 (D.Me. 1988) (opinion on motions to suppress). The evidence at trial showed that in September 1987 Eaton agreed to supply a friend, Tod Alexander, with a kilogram of cocaine, which Alexander would sell to "Jim" (who, unbeknownst to them, was an

* Of the Ninth Circuit, sitting by designation.

undercover government informant) for $45,000. After several conversations (recorded by government agents) and various false starts, on the evening of September 15, 1987 Alexander and Jim drove Jim's car while Eaton drove his truck to Roller World near Tobsham, Maine, where they had agreed that the sale would take place. Alexander walked about 200 yards down the road to Eaton's truck and returned to Jim's car with a sample of the cocaine. At that point, government agents, who had the area under surveillance, arrested Alexander. Government agents then went to Eaton's truck, ordered him out, arrested him, and removed a gun from under the front seat of the truck. Later, the agents found a kilogram of cocaine by a tree at the place where, earlier, a Corvette had been sitting, a Corvette next to which Eaton had parked his truck.

■ On this appeal, Eaton makes three legal arguments, none of which we find convincing. First, Eaton claims that the evidence is not sufficient to support his firearms conviction, a conviction for violating a statute that says

> Whoever, during and in relation to any ... drug trafficking crime ... uses or carries a firearm, shall [receive an additional punishment of] imprisonment for five years....

18 U.S.C. § 924(c)(1). Eaton concedes, as he must, that the presence of the gun, under the front seat of the truck he was driving, is sufficient to show that he "carrie[d]" a firearm." *United States v. Feliz–Cordero*, 859 F.2d 250, 253 (2d Cir. 1988) (weapon must be within reach to be "carried"); *United States v. Brockington*, 849 F.2d 872, 874 (4th Cir.1988) (loaded weapon under car seat is "carried" under § 924(c)). Rather, he argues that the undisputed evidence that he and his father (who is a gun collector) often carried guns when they drove means that the government failed to show that the "carr[ying]" was "in relation to" the drug crime. In our view, however, as in the view of the district court, the evidence (a) that Eaton told Alexander, the day before the exchange, that Eaton did not know whom he was dealing

with, that he did not want to "take a chance on his life" or "risk ... one kilo of cocaine being stolen," and that he would therefore carry a gun for "protection," (b) that the gun was easily within reach under the seat of the truck, (c) that it was loaded, and (d) that the safety catch was off permitting the gun to be fired instantly, taken together, are more than sufficient to show that the "carr[ying]" on September 15 was "in relation to" the drug crime. At the least, these facts show that the presence of the gun served to "embolden" Eaton by giving him "the opportunity or ability to display or discharge the weapon to protect himself or intimidate others," *United States v. Stewart*, 779 F.2d 538, 540 (9th Cir.1985), *cert. denied*, 484 U.S. 867, 108 S.Ct. 192, 98 L.Ed.2d 144 (1987), which is enough to support a conviction. Similarly, the evidence was sufficient to show either that Eaton "intended to have [the gun] available for possible use during the [drug] transaction," or that Eaton placed the gun where it was "strategically located so as to be quickly and easily available for use during such a transaction." *Feliz–Cordero*, 859 F.2d at 253. Either of those facts is sufficient to support a conviction under § 924(c). *Id.* *See also Brockington*, 849 F.2d at 874 (loaded weapon under car seat and drugs on defendant's person suffice for conviction under § 924(c)); *Stewart*, 779 F.2d at 540 (carrying of weapon during drug crime can be sufficient to show violation of the statute "whether or not ... display or discharge in fact occurred"); *United States v. Castro*, 776 F.2d 1118, 1125 (3rd Cir.1985) (gun beneath car seat and prior statements of intent suffice to prove intent to use gun to protect contraband), *cert. denied*, 475 U.S. 1029, 106 S.Ct. 1233, 89 L.Ed.2d 342 (1986); S.Rep No. 225, 98th Cong., 2d Sess. 1, 314 n. 10 (1983) *reprinted in* 1984 U.S. Code Cong. & Admin.News 3182, 3492 n. 10. (Where presence of weapon payed no part in crime the statute is not violated, but where the person carrying the gun intended to use it if a contingency arose, the statute is violated).

■ Second, Eaton argues that the district court should have suppressed a state-

ment that he made in response to a question asked by arresting officer Cuniffe before Eaton received a *Miranda* warning. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The question (in Cuniffe's words) was "whether he had a weapon," to which Eaton replied "that he had a weapon and that it was under the seat in the truck." We need not decide whether the court should have suppressed the statement, for the court admitted the gun itself into evidence without any objection by Eaton. Eaton does not claim that the seizure of the gun was the "fruit of the poisonous tree," *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963), *i.e.,* that the seizure stemmed from his statement. Nor, given the virtual inevitability that the police would lawfully search the truck, do we see how such a claim could have prevailed had he made it. *See Nix v. Williams,* 467 U.S. 431, 448, 104 S.Ct. 2501, 2511, 81 L.Ed.2d 377 (1984); *United States v. Bienvenue,* 632 F.2d 910, 914 (1st Cir.1980).

Given the admission in evidence of the gun itself, the admission of the statement Eaton made in answer to the question, that he had a gun under the seat, if error, is in our view harmless, and it is harmless beyond any reasonable doubt. *See* Fed.R. Crim.P. 52(a); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Crocker,* 788 F.2d 802, 807 (1st Cir.1986); *Bienvenue,* 632 F.2d at 914–15. Because we find no reversible error in the admission of the statement, we need not address Eaton's failure to object to its admission at trial.

■ Third, Eaton objects to the admission of certain answers he gave to questions after he received *Miranda* warnings. He agrees that one who receives *Miranda* warnings may waive his right to remain silent and his right to counsel and respond to questions. *Colorado v. Connelly,* 479 U.S. 157, 167–71, 107 S.Ct. 515, 522–24, 93 L.Ed.2d 473 (1986); *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1140, 89 L.Ed.2d 410 (1986); *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979). He also

agrees that a defendant may waive *Miranda* rights selectively, answering some questions but not others. *Bruni v. Lewis,* 847 F.2d 561, 563–64 (9th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 403, 102 L.Ed.2d 391 (1988) and —— U.S. ——, 109 S.Ct. 1319, 103 L.Ed.2d 587 (1989); *United States v. Thierman,* 678 F.2d 1331, 1335 (9th Cir.1982). He concedes that, in essence, when Officer Cuniffe "asked him whether he would be willing to waive his rights and answer questions," Eaton (in Officer Cuniffe's words):

said that it would depend on the questions and he would answer some questions if he thought it appropriate, basically.

(Tr. of suppression hearing, p. 59.) But, Eaton says that this response and his subsequent answers to questions did not amount to a "waiver," because his answer to Officer Cuniffe was "equivocal."

We assume for present purposes that, when a defendant's response is equivocal, in the sense that it indicates to the questioning officer that the defendant *may want an attorney,* the officer should not continue evidentiary interrogation. *See United States v. Fouche,* 833 F.2d 1284, 1287 (9th Cir.1987) (statement that defendant "might want to talk to a lawyer" is an equivocal request for counsel, barring further interrogation except to clarify the request), *cert. denied,* —— U.S. ——, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988); *United States v. Porter,* 776 F.2d 370 (1st Cir.1985) (order of court) ("where the accused's words and actions are ambiguous as to whether he wishes a lawyer ... the questioning officers must find out more specifically whether he wants a lawyer before they can proceed further with other questioning") (denying petition for rehearing and suggestion for rehearing en banc of 764 F.2d 1 (1st Cir.1985)); *Thompson v. Wainwright,* 601 F.2d 768, 771–72 (5th Cir. 1979) (defendant asserted right to an attorney when, after signing *Miranda* waiver, he said he wanted to talk to attorney, and police should then only have questioned defendant to clarify the equivocal request); *Nash v. Estelle,* 597 F.2d 513 (5th Cir.) (en banc) (upon equivocal request for counsel,

police must cease interrogation except to clarify request), *cert. denied,* 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979). *But cf. Connecticut v. Barrett,* 479 U.S. 523, 529–30 & n. 3, 107 S.Ct. 828, 832–33 & n. 3, 93 L.Ed.2d 920 (1987) (declining to address question of equivocal requests for counsel; finding defendant's agreement to answer oral questions, but not to give any written statement without counsel present, to be unequivocal waiver of his right to remain silent in counsel's absence); *Smith v. Illinois,* 469 U.S. 91, 95–96, 105 S.Ct. 490, 492–93, 83 L.Ed.2d 488 (1984) (per curiam) (declining to address question of equivocal responses; finding defendant's request for counsel unequivocal when, after being told that he had a right to have counsel present, he replied, "Uh, yeah. I'd like to do that."); *United States v. Rondon,* 614 F.Supp. 667, 669–70 (S.D.N.Y.1985) (finding assertion of right to counsel implicit in fact that defendant said he would "talk to Legal Aid" about treatment by police); *United States v. Olsen,* 609 F.Supp. 1154, 1158–60 (D.Me.1985) (same where defendant asserted right to an attorney when evidence showed that "at some point" defendant "discussed with [the questioning postal inspector] his need for an attorney").

In the present case, however, the defendant's statement is *not* an assertion of his right to an attorney, nor is it an "equivocal" assertion. There is nothing about the statement (nor anything we can find elsewhere in the record) that suggests he wanted an attorney. Rather, he simply says that whether he will "waive his rights and answer" depends on the questions asked. The district court found a knowing, voluntary "waiver." The law permits a "selec-

tive" waiver. *See Barrett,* 479 U.S. at 529–30, 107 S.Ct. at 832–33 (finding defendant's agreement to give oral, but not written, statements was unequivocal waiver of right to counsel during oral interrogation); *Bruni,* 847 F.2d at 563–64 (defendant waived right to counsel during interrogation when, even though defendant had just asked for an attorney, he then said "Well, ask your questions and I will answer those I see fit."); *Thierman,* 678 F.2d at 1335 (defendant waived rights when he told police they could ask questions and he would respond to those he wanted to answer). At no point during the brief questioning did Eaton equivocate or hesitate in a way that would indicate his interest in advice of counsel. Consequently, we cannot find support in the law for Eaton's claim.

For these reasons the judgment of the district court is

*Affirmed.*

REINHARDT, Circuit Judge, dissenting:

Because I believe that the questioning by police violated the appellant's Fifth Amendment rights to counsel and to remain silent, I dissent from the majority's affirmance of his conviction.

## I.

The police initially interrogated Eaton without advising him of his *Miranda* rights. *U.S. v. Eaton,* 676 F.Supp. 362, at 364–65 (D.Me.1988). They then read him the required warnings and asked him if he wished to waive his rights to silence and to counsel.[1] When he replied that "it depended on what questions were asked," the

---

1. 676 F.Supp. at 365. Officer Cunniff's suppression hearing testimony reflects the general content of the exchange. Eaton was informed during the reading of the *Miranda* warnings of his rights to remain silent and to have counsel present during interrogation. Cunniff then inquired if he would waive his rights and answer questions. The District Court characterized Cunniff's question in terms of whether Eaton "wished to waive those rights [i.e., the rights to silence and to counsel of which Eaton had just been informed] and speak .. without an attorney being present." Contrary to the majority opinion, it is clear in light of Cunniff's testimo-

ny and the district court opinion, that to the extent Eaton was invoking or waiving his Fifth Amendment rights, he was doing so in respect to *both* the right to counsel and the right to silence. To argue that Eaton never asserted any right to counsel, even equivocally, or that any "selective" waiver he made related only to his right to silence is to ignore the context in which Eaton responded to Officer Cunniff's question. The inquiry by Cunniff clearly pertained to both rights and Eaton's response must be dealt with in terms of both his right to counsel and to silence. *See* discussion *infra* at 516–517.

police proceeded to interrogate him fully about the alleged crimes, just as if he had agreed to waive his rights *in toto* and to answer all questions. *Id.* at 365.

Eaton claims that the police questioning violated his Fifth Amendment rights to silence and to the assistance of counsel. I agree. By his answer, Eaton invoked those rights in part. He asserted the right to counsel and to remain silent on *some* topics or questions but agreed to waive those rights as to *other* questions or topics. Eaton's answer was without doubt equivocal or uncertain. It provided the police with no indication as to the extent to which he sought to invoke or to waive his rights. It offered the police no information regarding the topics or questions on which he was willing to be interrogated, the topics or questions to which his partial waiver applied. The lack of specificity in Eaton's response imposed on his interrogators a duty to ask clarifying questions in order to ascertain the extent to which Eaton wished to assert his rights, and specifically in order to determine the topics on which Eaton wished to remain silent or consult with counsel. In the absence of clarifying questions, the interrogation conducted by the police violated Eaton's *Miranda* rights and the resulting evidence should have been suppressed.

### A.

Once an individual has invoked his Fifth Amendment rights, all police interrogation must cease. *Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612–13, 16 L.Ed.2d 694 (1966). Where the right to counsel is invoked, all questioning must cease immediately and no further questions may be asked until counsel is present, unless the individual voluntarily and knowingly initiates renewed exchanges with the police. *Edwards v. Arizona*, 451 U.S. 477, 483–84, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). Where the right to silence is invoked, interrogation must also immediately cease. *Miranda*, 384 U.S. at 445, 86 S.Ct. at 1612. But renewed interrogation may be initiated by the police if the interrogation is on a different subject and occurs after a significant period of time and after new *Miranda* warnings have been given. *Michigan v. Mosley*, 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975).

The rationale underlying these rules is the same. Custodial interrogation by its very nature subtly compels individuals to incriminate themselves. *Miranda*, 384 U.S. at 467, 86 S.Ct. at 1624 (concluding that "without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely"); *Connecticut v. Barrett*, 107 S.Ct. 828, 832 (explaining that *Edwards* rule is an "auxiliary barrier against police coercion"); *Mosley*, 423 U.S. at 103–04, 96 S.Ct. at 326–27 (requirement that police cease questioning after right to silence is invoked "counteracts the coercive pressures of the custodial setting").

The threat of coercion that custodial interrogation implicitly poses to crucially important constitutional rights underlies the Court's requirement that, when suspects invoke Fifth Amendment rights, police must immediately cease questioning and must thereafter limit any renewed interrogation to topics, offenses, and questions as to which the suspects have not yet asserted a right to remain silent. That same concern also underlies the requirement of new *Miranda* warnings in order to guarantee that police ascertain the appropriate limits of new interrogation. And, finally, it justifies the high degree of proof courts require before a valid waiver can be established. *See North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979) (government bears heavy burden in establishing waiver).

The fact that an individual has answered questions is, by itself, insufficient to establish a valid waiver because the responses may have been compelled by the very fact of custody or ongoing interrogation. *Edwards*, 451 U.S. at 484, 101 S.Ct. at 1884 (waiver cannot be established by showing individual responded to interrogation); *Smith v. Illinois*, 469 U.S. 91, 105 S.Ct.

490, 83 L.Ed.2d 488 (1984) (post-request responses not evidence of waiver); *United States v. Porter,* 764 F.2d 1, 6 (1st Cir. 1985) (same, citing *Edwards* ). Rather, the government must show by a preponderance of the evidence both that an individual's waiver was voluntary and that it constituted a "knowing and intelligent relinquishment or abandonment of a known right or privilege." *Edwards,* 451 U.S. at 482, 101 S.Ct. at 1884.

The requirements applicable to ordinary waiver cases apply with equal, and perhaps greater, force where the individual responds equivocally to a police request to waive his rights or agrees to make a partial, but undefined, waiver. When an individual responds ambiguously to a request to waive his rights or makes an equivocal or uncertain assertion of those rights, proceeding directly to investigatory questioning violates the principles underlying *Miranda, Edwards,* and *Mosley.* The individual's response may indicate a desire, albeit equivocal or unclear, not to be questioned on some topics or offenses at all, or not to be questioned on certain subjects without a lawyer present. It is the government's burden to establish that a knowing and voluntary waiver has occurred and to mark the boundaries of that waiver. Investigatory questions on those topics or offenses as to which the government has not established a waiver inherently violate *Miranda,* whether the individual answers or remains silent, because the police are required not to ask those questions in the first place.

The majority first denies that Eaton's statement constituted an assertion of his right to counsel—apparently not even an equivocal or partial one—and then characterizes the statement as a "selective waiver," apparently of Eaton's right to silence. This analysis ignores the context in which Eaton responded to the request to waive his rights.[2] The police had just read Eaton his *Miranda* warnings, which informed him both of his right to counsel and his right to remain silent. Eaton was asked if he wished to waive his rights. Thus, his response—that he would answer some questions and not others—reflected not only a partial invocation of his right to silence but a partial invocation of his right to counsel as well. At the very least, the response was equivocal as to whether he wished to have an attorney present before deciding whether to answer certain questions. The majority inexplicably overlooks this fact and proceeds directly to the question of whether Eaton's response was a partial or selective waiver of his right to silence. The majority may have concluded that Eaton was not asserting his right to counsel because he did not specifically refer to an attorney. But as the cases discussed below demonstrate, no particular formulation is necessary to invoke the right to counsel; each situation must be dealt with in its full context. However, my disagreement with the majority on this point may ultimately be of no great significance since the effect of equivocally or partially waiving the right to silence is identical to that of equivocally or partially waiving the right to counsel. In either case, the police must ask further clarifying questions to establish the nature and limits of the waiver.

While there is no prescribed formula for waiving or invoking Fifth Amendment rights, *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, some courts have recommended broadly construing any possible requests for counsel, *see, e.g., Smith v. Endell,* 860 F.2d 1528, 1531 n. 2 (9th Cir.1988). Nothing resembling a uniform standard has emerged. *Compare Oregon v. Bradshaw,* 462 U.S. 1039, 1041–42, 103 S.Ct. 2830, 2832–33, 77 L.Ed.2d 405 (1983) ("I do want an attorney before it goes very much further" held not to be an equivocal request for counsel), *with United States v. Cherry,* 733 F.2d 1124, 1130 (5th Cir.1984) ("maybe I should talk to an attorney before I make a further statement" held to be an equivocal request for counsel), *cert. denied,* 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987). But when an individual responds to an inquiry as to whether he is willing to waive his *Miranda* rights and answer questions, by saying "Depends on the question" it can only mean that he does

---

2. *See* n. 1 *supra.*

not want to answer some questions without counsel, or at all; that he does not wish interrogation on some subjects to proceed without counsel, or at all; and that if interrogation on those subjects is to occur then he wants to consult with counsel first.

The Supreme Court has never directly addressed the definition or effect of equivocal or uncertain *Miranda* responses,[3] although one Justice has concluded that "the police may not infer from a partial invocation of the right to counsel *alone* that the defendant has waived any of his or her rights not specifically invoked." *Barrett*, 479 U.S. at 534, 107 S.Ct. at 835 (Brennan, J., concurring in the judgment); *see also id.* at 529, 107 S.Ct. at 832 (Rehnquist, C.J.) (settled approach is to give a broad interpretation to request for counsel, interpretation being required where individual's request is ambiguous). The rule in the circuit courts, however is well settled. The First, Fifth, and Ninth Circuit Courts of Appeals, have adopted an approach that requires police, when confronted by an equivocal invocation of the right to counsel, to ask further narrow "clarifying" questions concerning the individual's desires before proceeding to interrogation. *See U.S. v. Porter*, 776 F.2d 370 (1st Cir.1985) (order of court); *Thompson v. Wainwright*, 601 F.2d 768 (5th Cir.1979); *Nash v. Estelle*, 597 F.2d 513 (5th Cir.1979) (en banc), *cert. denied*, 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979); *U.S. v. Fouche*, 776 F.2d 1398 (9th Cir.1985) (adopting Fifth Circuit rule). And the Seventh and Eleventh Circuits have adopted an identical approach where equivocal invocations of the right to silence are at issue. *See U.S. v. D'Antoni*, 856 F.2d 975, 980–81 (7th Cir.1988) (officers may ask questions intended to clarify whether the suspect was attempting to invoke his right to remain silent); *Christopher v. State of Florida*, 824 F.2d 836, 841–42 (11th Cir.1987) ("following an equivocal indication of the desire to remain silent, officers may ask questions designed

to clarify whether the suspect intended to invoke his right to remain silent"), *cert. denied*, 484 U.S. 1077, 108 S.Ct. 1057, 98 L.Ed.2d 1019 (1988).

Nothing in the reported cases indicates that, for purposes of applying the equivocal response rule, the courts would distinguish the right to silence and to counsel. Instead, the rationale underlying both types of cases supports the conclusion that whether it is the right to silence or the right to counsel that is at issue, "whenever an equivocal request ... is made by a suspect during custodial interrogation, the scope of that interrogation is immediately narrowed to one subject and one only. *Further questioning thereafter must be limited to clarifying that request* until it *is* clarified." *Thompson v. Wainwright*, 601 F.2d at 771 (emphasis in original).

The reason that police officers must seek to clarify a suspect's equivocal response to a question regarding his willingness to waive his Fifth Amendment rights is found in the *Miranda* line of cases. When an individual in custody equivocally asserts his Fifth Amendment rights, whether to counsel, to silence, or to both, proceeding directly to investigatory questioning frustrates his attempt to assert those rights. *See United States v. D'Antoni*, 856 F.2d at 981 (citing *Mosley*); *Christopher*, 824 F.2d at 842. The government cannot be permitted to "treat *Miranda* warnings as mere textual formula to be recited on the way to eliciting a confession." *United States v. Rondon*, 614 F.Supp. 667, 670 (S.D.N.Y. 1985). Rather, "*Miranda* requires the interrogating officer to go further and make sure that the accused, knowing his rights, voluntarily relinquishes them." *United States v. Olsen*, 609 F.Supp. 1154, 1160 (D.Me.1985). Asking clarifying questions is the most accurate method of establishing unambiguously just what rights an individual is waiving.

---

**3.** *Connecticut v. Barrett*, 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987) (finding no ambiguity in waiver, thereby reserving question of effect of equivocal responses to *Miranda* warnings); *Smith v. Illinois*, 469 U.S. 91, 105 S.Ct.

490, 83 L.Ed.2d 488 (1984) (*per curiam*) (finding assertion unequivocal, thereby reserving question of effect of equivocal or ambiguous requests for counsel).

The majority asserts that Eaton's response was not equivocal, that it was instead "selective". At the time he responded to the police request to waive his right to silence and his right to counsel, Eaton clearly desired that certain topics or questions be off limits to police interrogation. He responded that he was willing to answer some questions but not others. This may well be, as the majority contends, a selective waiver. But the selective waiver is also equivocal or uncertain in that it lacks the specificity that would enable the police to determine the nature or extent of the waiver. The response simply provides no information as to what questions Eaton was willing to answer and what questions he desired not to be confronted with. Because his interrogators failed to ascertain the topics or questions as to which he intended to assert his rights, and instead proceeded directly to unbounded investigatory questioning, they violated Eaton's right under *Miranda, Edwards,* and *Mosley* to have certain questioning cease immediately. The fact that Eaton responded to all the questions cannot alone establish a valid waiver because under the pressure of interrogation he might have answered questions which *at the time of the partial assertion of his rights* he desired not to respond to. That is the clear lesson of *Edwards* and the cases discussed earlier. See pp. 512–13 supra.

The cases cited by the majority are largely inapplicable to the present situation, and what little guidance they provide does not support the conclusion that Eaton's response constituted a valid selective waiver. In fact, the cases generally indicate that a valid selective waiver must, at a minimum, establish the topics, offenses, or questions as to which the individual wishes to remain silent. The only case the majority cites in which a selective waiver was found valid involved a response by an individual that explicitly restricted questioning to certain specified topics. In *Thierman* the defendant stated in his response to police that he would not answer questions concerning alleged credit-card fraud but would discuss other crimes. *United States v. Thierman,* 678 F.2d 1331, 1332 (9th Cir.1982). The court found that this selective waiver was scrupulously honored by the police. *Id.* at 1335.[4] In *United States v. Lopez–Diaz,* 630 F.2d 661 (9th Cir.1980), a case on which *Thierman* relies, the court also found a selective waiver where the defendant indicated he would not answer questions regarding certain specific offenses; the *Lopez* court ultimately concluded that when the police asked questions concerning the offenses they violated *Mosley;* it then ordered a reversal of defendant's conviction.

These cases are fully consistent with the rule that whenever a suspect responds with an equivocal or ambiguous invocation of his Fifth Amendment rights, police are required to first clarify the nature and extent of the waiver. They are fully consistent with the conclusion that if a suspect says he will answer some questions but not others, the police must seek to obtain a more certain answer to the waiver request. In the case of a selective or partial waiver of the right to silence, this means ascertaining those topics, offenses, and questions as to which the suspect wishes to remain silent.

Absent clarifying questioning by the police, a selective or partial waiver that lacks the requisite specificity remains equivocal

---

**4.** The majority cites only two other cases in support of its selective waiver conclusion—*Barrett* and *Bruni. Barrett* involved an individual who waived his right to remain silent as to all questions posed. He sought only to reserve his right not to sign a written statement without assistance of counsel. At no time prior to or during interrogation did he indicate that he wished oral interrogation to be limited in any way. The Court found the defendant's waiver of his right to silence to be complete. 107 S.Ct. at 832 ("*Miranda* gives the defendant a right to choose between speech and silence and Barrett chose to speak."). Moreover, the government appears to have scrupulously respected the suspect's reservation of the right he did reserve; there is no indication that he was ever asked to sign a written statement. *Bruni* involved a defendant's response that he would answer those questions "he thought his attorney would probably advise him to answer." 847 F.2d at 564. The court held only that such a response "was not an attempt to invoke a *present* right to counsel." *Id.* (emphasis in original). The defendant did not claim that the response constituted an invocation of the *right to remain silent,* equivocal or otherwise. Thus, the Ninth Circuit did not consider that issue at all.

and uncertain, and it is not possible to determine its nature or limits or to identify sufficiently the specific rights the suspect is preserving. Specifically, in this case, it was not possible, in the absence of a further inquiry, for the police to determine the topics or subjects as to which Eaton asserted his right to remain silent, and to guide their questioning accordingly.

Under the majority's construction, there is, as a practical matter, nothing "selective" or partial about Eaton's waiver. Although the waiver is *termed* a "selective waiver" the effect of the majority's reasoning is that *everything* is waived: the result is the same as if Eaton had said "Yes, I waive all of my *Miranda* rights in their entirety." The police simply proceeded with their interrogation as if Eaton had completely waived his right to silence and to counsel, asking questions with no limitation and with no conception of the topic or issues as to which Eaton had reserved his rights. The majority sees nothing wrong with this. However, if as it apparently concedes, there was only a partial or selective waiver, then some rights must have been reserved. Certainly, in this case, those rights did not receive the protections afforded by *Miranda, Edwards,* and *Mosley.*

The majority's apparent response is that Eaton still possessed the right "to cut off questioning." However, that right is one that was reserved to Eaton in any event. It existed regardless of whether Eaton partially or fully waived his right to silence or to counsel. *Mosley* established this principle beyond question, but more recently the Court has stated it even more forcefully. "Thus, as a matter of law, the assumed right of the police to interrogate a subject is no right at all; at best it is a mere privilege, *terminable at the will of the suspect." Moran v. Burbine,* 475 U.S. 412, 458, 106 S.Ct. 1135, 1160, 89 L.Ed.2d 410 (1986) (Stevens, J., dissenting); *see also id.,* at 423 n. 1, 106 S.Ct. at 1141 n. 1

(majority agreeing with Justice Stevens on this question).

Requiring clarifying questions serves the further purpose of resolving certain difficulties that arise from ambiguous responses and waivers. Without clarifying questions we can only make presumptions regarding the issue of waiver from a silent record, which we are specifically forbidden to do by *Miranda.* 384 U.S. at 498–99, 86 S.Ct. at 1640–41. Courts cannot, as the majority seems to have done, simply presume that a partial or equivocal waiver is in essence a full waiver, a waiver as to all subjects. When an individual says that he is only willing to answer some questions, and thus clearly does not waive his rights as to all subjects, courts must have some basis on the record for determining the subjects on which he is asserting his rights. Otherwise, they cannot determine whether the police "scrupulously honored" the individual's right to preclude questioning on those subjects. A related problem is that on a silent or equivocal record there is a greater risk that courts will inaccurately assess whether a waiver is knowing, intelligent, and voluntary. All these concerns justify requiring police, when a suspect makes an equivocal or partial waiver of his right to silence, to first ascertain those topics on which the individual is waiving his right before proceeding to investigatory questioning.

Such a rule is especially necessary when we consider that few individuals, when confronted by the police, will refuse to answer all questions under any circumstances. Many will be willing to provide police with personal information, indeed may feel they are obligated to do so.[5] Others will intend only to provide that information necessary for the government to prepare a bail recommendation. *See, e.g., U.S. v. Rondon,* 614 F.Supp. 667, 669 (describing U.S. Attorney policy of requesting information "about the defendant's occupation, address,

---

5. The law of the Ninth Circuit is that such questions do not constitute interrogation for purposes of *Miranda. See U.S. v. Disla,* 805 F.2d 1340 (1986) *cited in United States v. Doe,* 878 F.2d 1546, 1551 (1st Cir.1989). But from

the perspective of an individual in custody, such information may be the only information he wishes to yield by his equivocal waiver of *Miranda* rights.

family, schooling, prior employment, roots, criminal record, financial condition, etc., all being pertinent to the issue of the Government's bail recommendation"). Or, the individual may intend only to speak concerning police abuse. *See id.,* (describing policy of asking individuals in custody how police treated them). An equivocal or partial invocation of the right to silence or counsel then will often be intended only as a waiver as to certain non-substantive, non-evidentiary topics. But, if immediately after an individual has engaged in a limited or partial waiver of his rights to silence or counsel, police subject him to a complete investigatory interrogation, and fail to ascertain what topics he does not wish to discuss, the individual may well feel compelled to respond to questions he did not intend to answer at the time of his limited waiver.

For these reasons, I believe that Eaton's answers elicited during the police interrogation should be suppressed.

Accordingly, I respectfully dissent.